## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED DISASTER RESPONSE, L.L.C**                      **CIVIL ACTION**

**VERSUS**                                              **NO. 06-6075**

**OMNI PINNACLE, L.L.C. and**
**ST. TAMMANY PARISH**                                  **SECTION "B" (1)**

### ORDER AND REASONS

Before the Court is a Motion to Dismiss pursuant to FRCP 12(B)(6)or alternatively, a Motion for Summary Judgment pursuant to FRCP 56 filed by Defendant, St. Tammany Parish. Rec. Doc. 67. The Motion requests dismissal of the cross-claims brought against St. Tammany by Omni Pinnacle, LLC. The Motion is Opposed. Rec. Doc. 77. For the following reasons, the Motion is granted in part and denied in part.

### I.   BACKGROUND

United Disaster Response, LLC ("UDR") filed this diversity action against Omni Pinnacle, LLC ("Omni") and St. Tammany Parish ("St. Tammany") to recover amounts alleged to be due to UDR for performing debris removal in St. Tammany Parish after Hurricane Katrina. Post-storm, Omni and St. Tammany activated a contract for debris removal and disposal. Omni in turn subcontracted UDR to perform a portion of the work. UDR alleges that neither St. Tammany nor Omni have paid UDR, in full, for its services.

Omni answered the action and filed, *inter alia*, a cross-claim against St. Tammany alleging that it breached its contract with Omni by failing and/or refusing to pay amounts due or

alternatively, *quantum meruit* and for indemnity and contribution.

On January 17, 2007, St. Tammany filed a FRCP 12(b)(6) Motion to Dismiss the original action arguing that it is immune from suit under the Eleventh Amendment and that this court lacked jurisdiction due to a forum selection clause in the contract between St. Tammany and Omni providing that the Louisiana 22nd Judicial District Court "shall be the court of original jurisdiction of any litigation originated under this contract."

This Court denied St. Tammany's Motion on March 14, 2007, finding that it was not immune from suit and that the forum selection clause did not divest this Court of jurisdiction because the clause does not demonstrate an intent to make the 22nd Judicial District Court the exclusive jurisdiction. Rec. Doc. 28. This ruling was immediately appealed.

The Fifth Circuit affirmed the decision on the immunity issue and dismissed the appeal on the forum selection issue for lack of jurisdiction on December 12, 2007. The opinion was revised January 16, 2008, and St. Tammany's petition for rehearing was denied. The Fifth Circuit's Judgment issued as Mandate on February 12, 2008. The United States Supreme Court denied certiorari on June 23, 2008.

After the Fifth Circuit's dismissal of St. Tammany's appeal on the forum selection clause issue, but before the mandate issued, Judge Barbier in a separate case brought by another subcontractor who was contracted to do tree removal work in St. Tammany Parish

post-Katrina, found that the same forum selection language at issue in this suit provides for the 22nd Judicial District Court as the exclusive jurisdiction for litigation arising under the contract.[1] As such, Judge Barbier dismissed the action without prejudice.[2] The instant Motion followed on the same day as Judge Barbier's decision in *Top Branch*.

St. Tammany argues that Judge Barbier's decision in *Top Branch* is *res judicata* to the Omni cross-claims and they should be dismissed. St. Tammany submits that the parties and the causes of action in the *Top Branch* litigation are the same as in this litigation, that the Motions to Dismiss in that case and the original Motions to Dismiss in this case were almost identical, and the forum selection clause issue decided in *Top Branch* was not appealed and, therefore, is a final judgment which this Court must follow. St. Tammany argues that the former decision rendered by this Court is of no consequence because it was not final and, therefore, the only final judgment is that of Judge Barbier on the forum selection issue compelling this Court to render the same decision under *res judicata* principles.

---

[1] *See Top Branch Tree Service & Lanscaping, Inc. v. Omni Pinnacle, Et. Al.*, Civil Action 06-3723, Rec. Doc. 67 ("Top Branch"). In that case, the plaintiff, Top Branch Tree Services was the subcontractor of Smoak Brothers who was contracted by Omni to perform tree removal services. Top Branch sued Omni, St. Tammany Parish and Smoak Brothers. The defendants then filed cross-claims against each other.

[2] In so finding, Judge Barbier noted but rejected this Court's ruling that the same clause did not clearly demonstrate the intent of the parties to make the 22nd Judicial District Court the exclusive jurisdiction.

In addition, St. Tammany argues: (1) that Omni's unjust enrichment claim fails because a valid contract is in place providing Omni with a remedy at law; (2) that Omni's *quantum meruit* claim fails because Louisiana law does not recognize this cause of action; and (3) that the Court should not exercise supplemental jurisdiction over Omni's cross-claim because the issues in the main demand substantially predominate and because judicial economy, convenience, fairness and comity justify the Court exercising its discretion not to entertain supplemental jurisdiction over the state law causes of action.

Omni counters that the issue on the validity of the forum selection clause was previously decided by this section of the Court in this case and therefore, the "law of the case doctrine" precludes St. Tammany from re-litigating that issue. Omni also submits that the *res judicata* argument is without merit because Judge Barbier's *Top Branch* decision did not adjudicate the merits of the cross-claim; but rather was an interlocutory order addressing venue and was dismissed without prejudice. In addition, Omni argues that to the extent St. Tammany may argue that collateral estoppel applies, that argument should be rejected because the issue was not raised in the instant briefing and further, none of the elements necessary to raise collateral estoppel are present in this case. Omni also submits that this Court's decision was rendered prior to Judge Barbier's decision

and, therefore, St. Tammany is directly estopped from re-raising the forum selection issue a second time in this court. Alternatively, Omni argues the merits of the forum selection issue and claims that the clause is not applicable to the cross-claim filed by it against St. Tammany.

Omni argues that the Court has jurisdiction over the cross-claim against St. Tammany because those claims are so related to the main demand that they form part of the same case or controversy under 28 U.S.C § 1367. Further, they argue that the statutory exceptions to section 1367 are inapplicable. Next, Omni asserts that St. Tammany cannot challenge the venue of the claims brought by Omni because those claims are ancillary to the main demand and as such, no venue objection is permitted on those claims.

On the unjust enrichment/*actio de in rem verso* and *quantum meruit* claims, Omni argues it has properly pled these claims in the alternative to its breach of contract claims. Further, they assert that St. Tammany's arguments are premature because Omni needs to first conduct discovery on the merits of these issues.

## II.  LAW AND ANALYSIS

### (A)  FRCP 12(b)(6) Standard.

Dismissal pursuant to FRCP 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The

complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988). The Court cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of his claim which would entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

**(B) Res Judicata.**

*Res judicata* bars a subsequent action if: (1) the parties are identical in both actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior judgment was final on the merits; and (4) the cases involve the same cause of action. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 559 (5th Cir.1983). The rules of *res judicata* actually comprise two doctrines concerning the preclusive effect of a prior adjudication. "Claim preclusion," or true res judicata treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." *Kaspar Wire*

*Works, Inc. v. Leco Engineering & Mach., Inc.,* 575 F.2d 530, 535
-536 (5th Cir. 1978) (citations omitted).  Under the rules of claim
preclusion, the effect of a judgment extends to the litigation of
all issues relevant to the same claim between the same parties,
whether or not raised at trial.  *Garner v. Giarrusso*, 571 F.2d 1330
(5th Cir. 1978).  The aim of claim preclusion is to avoid multiple
suits on identical entitlements or obligations between the same
parties.

The second doctrine, collateral estoppel or "issue
preclusion," recognizes that suits addressed to particular claims
may present issues relevant to suits on other claims.  Issue
preclusion bars the relitigation of issues actually adjudicated,
and essential to the judgment, in a prior litigation between the
same parties.  *Harris v. Washington*, 404 U.S. 55, 92 S.Ct. 183, 30
L.Ed.2d 212 (1971).  It is insufficient for the invocation of issue
preclusion that some question of fact or law in a later suit was
relevant to a prior adjudication between the parties; the contested
issue must have been litigated and necessary to the judgment
earlier rendered.  *Id.*

Both of these doctrines rest upon finality.  Further, they are
generally used to preclude or bar subsequent action that would be
inconsistent with a prior decision.  The issues usually turn on
whether the first decision was a "final judgment" so that it
precluded a subsequent action.  Here, St. Tammany argues that the

7

rules and principles of *res judicata* can act in reverse or backwards to require a court that ruled on an issue, but did not make its decision a final judgment, to change its decision solely because a second decision was rendered and final, in that it disposed of a case.  There is no provision in the law requiring the result St. Tammany requests.

In *Cycles Ltd. v. Navistar Financial Corporation, et al.* 37 F. 3d 1088 (5th Cir. 1994), the  Fifth Circuit reviewed the issue presented here.   The plaintiff in *Cycles* filed a suit for conversion in the Southern District of Mississippi against W. J. Digby ("Digby I").   That Court rule for Cycles.  Subsequently, Cycles sued Navistar in the Southern District of Mississippi also for conversion.  That court issued a "final judgment" and awarded damages to Cycles.  However, that decision was never cemented into a final, appealable order.  Instead, that court waited for four years for the resolution of a third suit filed in the Eastern District of Arkansas.  Digby I was vacated for lack of jurisdiction and the third action ("Digby II") was filed by Cycles against Digby in the federal district court for the Eastern District of Arkansas. That court ruled in favor of Digby.   After that decision, the Mississippi district court revised its original opinion in favor of Cycles and entered judgment for Navistar explaining that principles of *res judicata* and collateral estoppel compelled it to reverse its original judgment.  *Cycles,* 37 F. 3d at 1089.

The Fifth Circuit found that the Mississippi court was in error when it reversed its prior decision because a "court is not compelled to revise its fully litigated decision by later inconsistent decisions of other courts." *Cycles*, 37 F. 3d at 1090. As such, the Court concluded that "the preclusive reach of decisions does not extend to prior decisions." *Cycles*, 37 F. 3d at 1091.

In so finding, the Fifth Circuit stated that the Arkansas judgment "had no preclusive effect upon decisions already reached after full litigation, like the original ruling.  Judgments are final for purposes of issue preclusion when fully litigated, even if not yet appealable." *Cycles*, 37 F. 3d at 1090 (citations omitted).  The Fifth Circuit pointed out that it did not matter that the Mississippi decision had no preclusive effect on the Arkansas decision. *Cycles,* 37 F. 3d at 1090, 1091.  What matters is if the first decision is fully litigated and if so, stands "unaffected by a later inconsistent judgment." *Cycles,* 37 F. 3d at 1091.  The *Cycles* court was persuaded that the original decision was "final for purposes of issue preclusion, and the district court erred when it concluded that it was bound by the later decision of the Arkansas federal court to reverse its original ruling." *Cycles,* 37 F. 3d at 1091.

A leading authority on federal practice and procedure has cited with approval *Cycles* and its handling of a later inconsistent

judgment:

> A third situation is most likely to arise from
> the final disposition of one or more issues or
> claims in an action that has not yet produced
> a final appealable judgment.  A second action
> may proceed to final judgment after rejecting,
> or failing to consider, the res judicata
> consequences of the dispositions made in the
> first action.  The first court then may be
> asked to abandon its own prior disposition in
> favor of inconsistent determinations made by
> the judgment in the second action. **The cases
> that deal with this question uniformly refuse
> to surrender the position first taken.** It is
> easy to understand why the court that decided
> first would prefer to protect its own decision
> against preclusion in circumstances that did
> not afford any opportunity to avoid deciding
> for itself.  This instinct is likely to be
> reinforced if its own decision was not
> advanced as a basis for preclusion in the
> second proceeding, or if preclusion was denied
> on grounds that seem untenable.  It is not
> clear, however, that the first court should
> always stick to its guns.  The second judgment
> might clearly show the error of the first
> disposition. It is better to avoid any flat
> rule.  The first court should be free to
> reconsider, and in deciding whether to
> reconsider may take account of the advantages
> of consistent results.  Reconsideration would
> be a matter not of preclusion but of the
> court's control of its own proceedings.
> (Emphasis added)

18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4404 (2d ed.), 18 Fed. Prac. & Proc. Juris. 2d § 4404.

The issue between Omni and St. Tammany on the forum selection clause issue was decided by this Court after full litigation of that issue between Omni and St. Tammany.  As St. Tammany has acknowledged, it presented its arguments in support of its Motion to Dismiss and an opposition by Omni was filed.  The Court also

allowed a reply and supplemental memoranda by the parties.  After reviewing all the arguments of the parties, this Court ruled in favor of Omni.  Accordingly, the issue was fully litigated between these parties.  Similar to the Mississippi District Court in *Cycles*, this Court did not render its order on the forum selection clause issue as a final, appealable order; however, as the Fifth Circuit explained, the determination is whether the decision was fully litigated in this Court and if so, it cannot be affected by a later inconsistent judgment despite that the later judgment is final.  Accordingly, this Court is not bound by Judge Barbier's ruling in the *Top Branch* decision and St. Tammany's Motion to Dismiss Omni's cross-claim based upon *res judicata* is denied.

**(C)   *Quantum Meruit*, Unjust Enrichment, and *Actio de in rem verso*.**

Beginning with *quantum meruit*, there is not a cause of action under Louisiana law for the common law doctrine of *quantum merit*. *See Morphy, Makofsky & Masson v. Canal Place*, 538 So. 2d 569, 574. (La. 1989).  The civilian concept of *quantum meruit* is the measure of compensation or price unstated in a contract whereas the common law substantive claim of *quantum meruit*, similar to the civilian *actio de in rem verso*, is geared toward equity and unjust enrichment. *Morphy*, 538 So.2d at 574.  In the former, a contract, implied or actual, exists, and the court merely supplies a price. In the later, no contract exists, and the court must supply a

substantive basis for recovery.

When using *quantum meruit* in the first instance, it is used as descriptive term, "descriptive of the equitable principles of contract interpretation," and plaintiff must show only the reasonable value of his services regardless of whether defendant's patrimony is commensurately enriched. *Morphy*, 538 So.2d at 574-575. Conversely, both common law *quantum meruit* as a substantive law basis of recovery and *actio de in rem verso* both require that plaintiff prove the degree of his impoverishment and the extent of defendant's enrichment, and neither theory applies where a contract exists. *Dumas and Associates, Inc. v. Lewis Enterprises Inc.,* 704 So.2d 433, 437 (La. App. 2nd Cir. 1997)(citations omitted). When the circumstances surrounding a relationship reveal that a contract or implied contract exists, the unjust enrichment or the *action de in rem verso* cause of action is not available because an adequate remedy at law exists. When a contract is implied from the circumstances (all other elements of a contract are present), but no agreement as to compensation has been reached, the missing term is supplied by the court, and the measure of damages, under what has been termed *quantum meruit* in Louisiana law, is the reasonable value of claimant's services. *Dumas and Associates, Inc.*, 704 So.2d at 438.

Louisiana courts have attempted to alleviate the "confusion and inconsistency" in use of the term *quantum meruit* and have found

that *quantum meruit* as a substantive basis of recovery is viewed with disfavor in Louisiana.  SMP *Sales Management, Inc. v. Fleet Credit Corp.*, 960 F. 2d 557 (5th Cir. 1992 ); *Folgeman v. Cajun Bag & Supply Company*, 638 So. 2d 706, 707-08 (La. App. 3rd Cir. 6/15/1994)(pointing out that *quantum meruit* on a substantive basis for recovery is disfavored by Louisiana law).

Omni alleges that it is entitled to recovery based upon the theory of *quantum meruit,* if, in the alterative, the Court determines that the under the terms of the contract St. Tammany does not owe Omni Pinnacle payment for the work owed.  *Quantum meruit*, as used by Omni as an equitable remedy for payment in the absence of a contract, is not recognized as a cause of action under Louisiana law.  Further, any argument that the Court should apply the descriptive *quantum meruit* as a measure of compensation is premature as there has been no finding of an implied contract or a contract where price was not agreed to or no agreements as to compensation has been reached.  Accordingly, St. Tammany's Motion to Dismiss the *quantum meruit* claims is granted.

Turning to the claims for unjust enrichment, to state a claim Omni must demonstrate: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment or impoverishment, and (5) no other remedy at law.  *SMP Sales Management, Inc.*, 960 F.2d at 560 (5th Cir. 1992).  When there

exists an independent remedy at law, such as a contract, the *actio de in rem verso* or unjust enrichment action is not available. LSA-CC art. 2298; *Morphy*, 538 So. 2d at 575.

St. Tammany argues that Omni cannot state a claim for unjust enrichment because Omni has a remedy at law, namely the breach of contract action. Omni counters that while the majority of its claims against St. Tammany are based in contract, "some of the claims may be for work performed by Omni Pinnacle which was accepted by St. Tammany Parish or its agent Shaw, but which may not be covered under the Contract." Omni further argues that dismissal is premature because it has not been able to conduct discovery on these issues.

While Omni argues it has pled its unjust enrichment claim against St. Tammany as a separate cause of action based upon work performed that was not covered by the contract and, therefore, falling outside of the breach of contract action, the cross-claim does not indicate this separate claim. The cross-claim asserts "St. Tammany Parish has been unjustly enriched by and has enjoyed the benefit of the work performed by Omni Pinnacle and its subcontractors...". The cross-claim further provides, "[i]n the alternative, in the event that it is determined under the terms of the contract between them St. Tammany Parish does not owe Omni Pinnacle payment for any of the work performed by Omni Pinnacle, Omni Pinnacle is entitled to compensation from the Parish on a

14

*quantum meruit* basis." Based upon these allegations, Omni's claim is that if this Court finds St. Tammany does not owe any payment under the contract, then unjust enrichment would, alternatively, apply. There are not any separate allegations that work not performed in accordance with the contract should be compensated under an unjust enrichment theory.

The only claims before the Court currently are those alleging Omni's breach of contract claims for work performed in accordance with the contract terms and conditions. An adequate remedy is available to it at law, namely, the breach of contract action; therefore, the Motion to Dismiss the unjust enrichment claims is granted. To the extent Omni seeks to amend their claim, leave of court is necessary.

**(D) Supplemental Jurisdiction.**

Finally, the Court turns to the issue of supplemental jurisdiction. 28 U.S.C. § 1367(a) provides that in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are **so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution**. (emphasis added). St. Tammany does not dispute that the Court has jurisdiction under this section over the cross-claim, but requests this Court exercise its discretion and decline jurisdiction of the

15

cross-claim under section 1367(c)(2) and (3).

Section 1367(c)(3) is inapplicable because the Court has not dismissed the main demand over which it has original jurisdiction based upon diversity of citizenship. Section 1367(c)(2) states that the Court may decline to exercise supplemental jurisdiction when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). St. Tammany argues that the issues in the cross-claim predominate over the issues in the main demand because: (1) Omni's cross-claim seeks damages for over $16 million due to an alleged breach of contract between St. Tammany, Omni and third-party defendant, Shaw; (2) the cross-claim litigation concerns over $20 million in over billing, will require massive discovery, hundreds of depositions and a four week jury trial; and (3) the scope of the issues and the complexity of the litigation arising out of Omni's cross-claim predominate.

A federal court will find substantial predominance when it appears that "a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution

to state tribunals." *Gibbs*, 383 U.S. at 726-27, 86 S.Ct. 1130.

After reviewing the main demand and the cross-claim filed by Omni, the Court finds that the scope of the issues presented, the damages alleged, and the evidence required to prove both, are substantially the same.  The main demand seeks damages against Omni and St. Tammany, in sum, for failing to pay plaintiff in excess of three million dollars for services performed after Hurricane Katrina.  The basis for Omni's cross-claim, in sum, is St. Tammany's failure to pay Omni the $16 million for work performed under the contract which work was performed by, among others, the plaintiff in this case.  The actions are sufficiently intertwined so that one does not predominate over the other and the discovery, evidence, etc., will overlap in both the main demand and in the cross-claim.  Further, the main demand and the cross-claim involve the same Louisiana state law principles.  Accordingly, the Motion to Dismiss the cross-claim based upon supplemental jurisdiction is denied.

### III. CONCLUSION

For the foregoing reasons, St. Tammany's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART.**

Accordingly,

**IT IS ORDERED** that St. Tammany Parish's Motion to Dismiss (Rec. Doc. 67) is **GRANTED** on Omni's claims against St. Tammany on *quantum meruit* and unjust enrichment, the Motion is **DENIED** as to

all other relief.

New Orleans, Louisiana, this 31st day of July, 2008.

**IVAN L. R. LEMELLE**
**UNITED STATES DISTRICT JUDGE**