UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED DISASTER RESPONSE, LLC            CIVIL ACTION

VERSUS                                    NO. 06-6075

OMNI PINNACLE, LLC, ET AL.                SECTION B(1)

### ORDER AND REASONS

Before the Court is a Motion to Dismiss Claims of United Disaster Response, LLC ("UDR") filed by Defendant St. Tammany Parish. (Rec. Doc. 150). The Motion requests dismissal of all remaining claims brought against St. Tammany Parish ("St. Tammany") by Plaintiff UDR and addresses specific issued raised by the Court in an order denying a previous motion to dismiss filed by the Parish. (See Rec. Doc. 142). The issues include (1) whether the claims are precluded because the contract at issue is not a public works contract, (2) whether, if the Louisiana Public Works Act ("LPWA") applies, it is exclusive and bars all of UDR's remaining claims, and (3) if the Act applies, whether the unjust enrichment action is barred. After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to UDR's claims under LPWA because the Court finds LPWA inapplicable to this service contract for hurricane debris removal. The motion is **DENIED** with respect to UDR's unjust enrichment claims.

1

**BACKGROUND**

United Disaster Response, LLC ("UDR") filed this diversity action against Omni Pinnacle, LLC ("Omni") and St. Tammany Parish ("St. Tammany") to recover amounts alleged to be due to UDR for performing debris removal after Hurricane Katrina. Post-storm, Omni and St. Tammany entered into a contract for debris removal and disposal. Omni in turn subcontracted UDR to perform a portion of the work under the contract. UDR alleges that neither St. Tammany nor Omni have paid UDR, in full, for its services. The Complaint alleges St. Tammany breached its duty to require Omni to furnish a payment bond under the Louisiana Public Works Act ("LPWA") and that the Parish is liable to UDR in *quantum merit* and unjust enrichment.

On January 17, 2007, St. Tammany filed a FRCP 12(b)(6) Motion to Dismiss arguing that it is immune from suit under the Eleventh Amendment and that this Court lacked jurisdiction due to a forum selection clause in the contract between St. Tammany and Omni providing that the Louisiana 22nd Judicial District Court "shall be the court of original jurisdiction of any litigation originated under this contract."

This Court denied St. Tammany's Motion on March 14, 2007, finding that it was not immune from suit and that the forum selection clause did not divest this Court of jurisdiction because the clause, in sum, does not demonstrate an intent to make the 22nd Judicial District Court the exclusive jurisdiction. (Rec. Doc.

28). This ruling was immediately appealed.

The Fifth Circuit affirmed this Court's decision on the Eleventh Amendment Immunity issue and dismissed the appeal on the forum selection issue for lack of jurisdiction on December 12, 2007. The opinion was revised January 16, 2008, and St. Tammany's petition for rehearing was filed and denied. The Fifth Circuit's Judgment issued as Mandate was issued on February 12, 2008. The United States Supreme Court denied a writ of certiorari on June 23, 2008. (Rec. Doc. 134).

On February 6, 2008, after the Fifth Circuit's decision, Judge Barbier in *Top Branch Tree Service & Landscaping, Inc. v. Omni Pinnacle, et. al.*, Civil Action 06-3723, a separate case brought by another subcontractor contracted to do debris removal work in St. Tammany Parish post-Katrina, found that the same forum selection language at issue provided that the 22nd Judicial District Court is the exclusive jurisdiction for litigation arising under the contract.[1] On that same date, St. Tammany filed the a second Motion to Dismiss which was granted in part and denied in part. The Court granted the motion with respect to the quantum meruit claims, denied the motion without prejudice on the LPWA and unjust enrichment claims, and directed the Parish to refile its Motion to Dismiss addressing only the issues raised by the Court in that Order. (Rec. Doc. 142 at 11). The instant Motion to Dismiss was

---

[1] The action was dismissed without prejudice, and it is the Court's understanding that the action has been re-filed in the 22nd Judicial District Court.

filed pursuant to that Order and addresses the LPWA claims and unjust enrichment.

St. Tammany argues that the contract is a public works contract. St. Tammany bases this argument on its assertion that the determination of "public works" rests upon whether the work was performed on property owned by a public entity or a private entity rather than whether the work performed was a service or of a public improvement/construction nature. St. Tammany further argues that the contract was advertised and bid under the Public Bid Law and has been treated as a public works contract. Next St. Tammany argues that because the contract at issue is a public works contract, the LPWA provides the exclusive remedy for any action by UDR under the contract and bars UDR's remaining claims, including unjust enrichment.

St. Tammany then argues that UDR's LPWA claim alleging that the Parish breached its duty to require Omni to post a payment bond should be dismissed because UDR has not stated a claim under LPWA and that such claim would be premature. St. Tammany asserts that UDR has alleged no facts in its complaint to establish UDR's timely compliance with LPWA allowing it to assert a claim against the Parish. St. Tammany presents *Siemens Bldg. Technologies, Inc. v. Jefferson Parish*, 298 F.Supp. 2d 415 (E.D. La. 2004), and argues that a subcontractor cannot sue the owner under LPWA unless final payment has been made by the owner to the contractor and the owner has failed to withhold sums sufficient to cover any outstanding

liens or claims. St. Tammany asserts that it cannot make final payment on its contract with Omni because it has notice of outstanding liens and claims.[2] Finally, St. Tammany argues that if the Court finds that the contract is not a public works contract, then UDR lacks the privity to assert a claim against the Parish.

UDR first argues that the contract is not a public works contract because it is a service contract rather than a construction contract; thus LPWA does not apply. Noting that it only had three claims against St. Tammany, quantum meruit (Count Three), which has been dismissed, unjust enrichment (Count Five), and Breach of LPWA Duty to Obtain Bond (Count Seven), UDR argues that if LPWA is inapplicable, its LPWA claim (Count Seven) would be dismissed and UDR would have no other remedy at law than its claim of unjust enrichment. UDR further argues that it has not asserted a contractual claim against St. Tammany and privity of contract is not required for its claim of unjust enrichment.

## DISCUSSION

Dismissal pursuant to FRCP 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as

---

[2] See La. Rev. Stat. 38:2191 (providing for final payment only after presentment of a clear lien and claim certificate by contractor).

true.  *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980).  When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded allegations and resolve all doubts in favor of the plaintiff.  *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).  "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief."  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965-68 (2007)).

**A. Public Works Contract**

La. Rev. Stat. 38:2211 defines a "public work" as "the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity."  The only case law on the issue of whether hurricane debris removal is a public work under La. Rev. Stat. 38:2211 is *Regency Construction, Inc. v. Lafayette City-Parish Consolidated Government*, 847 So.2d 796 (La. App. 3 Cir. 6/4/03). In finding that the debris removal contract at issue in *Regency* was not a public work contract, the Louisiana Third Circuit Court of Appeal looked to the LPWA's two-part definition of public works, which first describes the type of work, i.e. "erection, construction, alteration, improvement, or repair," and then

6

describes the type of item worked on, namely "any public facility or immovable property owned, used or leased by a public entity." La. Rev. Stat. 38:2211. Specifically, the Third Circuit held, "Not only is this not a contract to do some type of construction on public property but it also involves performing work on private property." *Regency*, 847 So.2d at 789. Contrary to the argument of St. Tammany, the reasoning of the *Regency* court provides no guidance as to whether work on private property was the "determining factor" in the court's finding that the debris removal contract was not a public works contract because neither criteria of the LPWA was met in that case. (Rec. Doc. 164 at 2).

The Louisiana Attorney General's Opinion No. 07-0061, which involved contracts for hurricane debris management and removal in St. Bernard Parish following Hurricanes Rita and Katrina, interpreted *Regency* for the legal holding that "a debris removal contract is a service contract, not a public works contract." In arriving at this conclusion, the Attorney General, relying upon previous Attorney General Opinions,[3] stated:

---

[3] Previous opinions cited by the Attorney General include: *Op. Atty. Gen.*, No. 02-0418, December 2, 2002 (Louisiana Attorney General opinion ruling that the Louisiana Public Bid Law, La. R.S. 38:2181, *et seq.*, including its provision on the procurement of professional services La. R.S. 38:2310(7), did not apply to procurement of services involving removal of debris from reservoirs, canals and levees because "no limitation exists on the type of service agreement a political subdivision may negotiate"); Op. Atty. Gen. 92-717 (Public Bid Law does not apply to contract for services of electrician and owners of heavy equipment to restore public service after Hurricane Andrew), Op. Atty. Gen. 97-239 (Public Bid Law does not apply to contract for collection of solid waste), Op. Atty. Gen. 99-280 (Public Bid Law does not apply to contract for electrical and mechanical services), Op. Atty. Gen. 03-0108 (Public Bid Law does not apply to contract for professional services of engineers, geologists and other professionals).

7

> The Louisiana Public Bid Law, LSA R.S. 38:2211-2296, regulates contracts by local public entities when the contracts relate to the construction of public works or the acquisition of materials and supplies. However, contracts for services, professional or otherwise, are not subject to the requirements of the statute.

La. Atty. Gen. Op. No. 07-0061, 2007 WL 1100701 (La. A.G.). The interpretation that contracts for services are not public works contracts is consistent with case law. Prior to the enactment of La. Rev. Stat. 38:2211(A)(12), which defines "public work," the Louisiana Supreme Court held that "the term means a building, physical improvement, or other fixed construction." *Wallace Stevens, Inc. v. Lafourche Parish Hospital District*, 323 So.2d 794, 796 (La. 1975). Cases subsequent to the 1991 amendment continue to reference the *Wallace Stevens* definition. See *Waste Management of Central Louisiana v. Beall*, 880 So.2d 923, 931 (La. App. 3 Cir. 8/4/2004), and *Barabay Property Holding Corporation v. Boh Brothers Construction Co., LLC*, 991 So.2d 74, 80 (La. App. 1 Cir. 5/2/2008). The court in *Waste Management*, a case involving the management of a landfill, found that "[t]he legislative definition of 'public work' enacted in 1991 comfortably accords with 'a building, physical improvement, or other fixed construction'" as applied in that case.

---

*Op. Atty. Gen.*, No. 84-229, March 8, 1984 (Louisiana Attorney General opinion ruling that Louisiana's Procurement Code for state agencies, La. R.S. 39:1551 *et seq.* did not apply to a parish that had not adopted that Code, and that the Louisiana Public Bid Law, La. R.S. 38:2181, *et seq.*, did not apply to procurement of waste disposal services that did not involve either the construction of a public work or the acquisition of materials or supplies).

As noted by the *Regency* court, hurricane debris removal is not "some type of construction on public property." Hence this Court, in accordance with the limited amount of Louisiana law on the subject, agrees with the opinion of the Louisiana Attorney General that "contracts for hurricane debris management and removal would constitute service contracts," rather than public works contracts under LPWA. Therefore, the Court finds that the contract for hurricane debris removal at issue in the present case is not a "public works" contract as defined by La. Rev. Stat. 38:2211. Subsequently, LPWA does not apply, and UDR's LPWA claim alleging that St. Tammany breached its LPWA duty requiring contractor Omni to post a payment bond is **DISMISSED**. The Court therefore finds it unnecessary to evaluate St. Tammany's arguments regarding the application of LPWA, specifically whether UDR stated a claim under LPWA or whether such claim is premature, whether the LPWA bars UDR's remaining claims, and whether unjust enrichment is available to UDR under the LPWA.

**B. Unjust Enrichment and Privity**

The doctrine of unjust enrichment is based on Article 1965 of the Louisiana Civil Code, which states that no one ought to enrich himself at the expense of another. *A.V. Smith Construction, Company, Inc. v. Maryland Casualty Company*, 450 So.2d 39, 41 (La. App. 3 Cir. 1984). Courts have employed the doctrine to allow recovery where there is no contract but a municipality reaps benefits from another party. *Id*. The requirements for recovery

9

under a theory of unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of "justification" or "cause"[4] for the enrichment or impoverishment; and (5) the absence of any other remedy at law. *Id*. *See also Vandervoort*, 396 So.2d at 484.

St. Tammany argues that UDR's claims are "based solely upon the work done by it under its contract with Omni" and that UDR's claims against St. Tammany are barred because of a lack of privity. (Rec. Doc. 164 at 5). St. Tammany also attempts to characterize this lack of privity as a bar to the third requirement of unjust enrichment, a connection between the enrichment and the impoverishment. *Id*. at 7. Finally, the Parish argues that unjust enrichment cannot be met because UDR has another remedy at law, namely its breach of contract action against Omni on the contract between Omni and UDR. St. Tammany's arguments fail when applied to the instant case.

Three cases cited by St. Tammany on the legal theory of privity involve suits between an owner and a subcontractor, *Lumber Products, Inc. v. Hiriart*, 255 So.2d 783 (La. App. 4 Cir. 1972), *Olympia Company, Inc. v. Gervais F. Favrot Company, Inc.*, 342 So.2d 1275 (La. App. 4 Cir. 1977), and *Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc.*, 765 So.2d 1087 (La. App. 4 Cir. 5/24/00).

---

[4]"Cause" means "that the enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act." *Guillory v. Hayes*, 576 So.2d 1136, 1141 (La. App. 4 Cir. 1991).

However, the facts and issues analyzed by the appellate court in these cases are not analogous to the specific facts and issues under consideration in the present motion to dismiss. *Lumber Products* involved a suit by the subcontractor against both the owner and the general contractor for unpaid services and the owner's reconventional demand against the subcontractor on the basis of deficient work. The trial court ruled in favor of the subcontractor and <u>against the owner on a theory of unjust enrichment</u> but ruled in favor of the owner on the reconventional demand upon a finding of defective work. Only the defective work claims were considered on appeal, and the appellate court analyzed neither privity nor unjust enrichment with respect to the subcontractor's claim against the owner. *Id*. at 786.[5]

*Olympia Company* also offers little guidance on the application

---

[5]The *Lumber Products* court recognized that unjust enrichment was not before it and summarily stated that the subcontractor was not entitled to an increase of his award. *Id*. at 786-87. The court did note however, at the beginning of its analysis of the owner's reconventional demand, that the basis of the subcontractor's suit against the owner was La. Rev. Stat. § 9:4812, a statutory provision allowing a contractor "who enters into an oral but unrecorded subcontract [to] obtain a cause of action against the owner of the building upon which he works by filing an appropriate lien document . . . irrespective of any lack of privity of contract between himself and the owner." *Id*. at 787 n.4. The court also stated, "The established rule is that, in the absence of a contrary statutory provision, an action ex contractu cannot be maintained against a party to a contract by a person who is not privy thereto." *Id*. at 487. However, the court's privity analysis focused on whether the damage sued for was the defectively performed work itself or for damage caused by the defective work. *Id*. The court explained, "Where the damage sued for is the defectively performed work itself, the action is strictly a contractual one and only those who are in privity with the contractor have an action against him. However, where the damage sued for its not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present." *Id*.

11

of unjust enrichment and privity to the present case because the *Olympia* claims centered around allegedly excessive insurance payments received by the owner due to a hailstorm that occurred two years after final acceptance of the building. In *Olympia*, the subcontractor was hired by the general contractor for roofing work. The general contractor withheld a portion of the payment owed to the subcontractor.[6] *Id.* at 1276. The insurance proceeds paid to the owner exceeded the costs of repairs to the roof.[7] The subcontractor brought suit against the owner and the general contractor, alleging against the owner claims of unlawful conversion of the excess insurance proceeds and unjust enrichment. Noting that the subcontractor had not filed any liens (or the liens were released), the court of appeal upheld the trial court's dismissal of the subcontractor's claims against owners on the basis of a lack of privity and upon its finding that the subcontractor's "suit [was] one solely from the breach of contract between it and the general contractor." *Id.* at 1276-77. In its analysis of unjust enrichment, the court found that any excessive payment claim was between the insurer and the owner, not the subcontractor; therefore the unjust enrichment requirement of a connection between the enrichment and the impoverishment was not met. *Id.* at 1277-78.

---

[6] It is unclear whether the owner paid the contractor in full; no reason is provided in the opinion for the contractor's withholding of a portion of the amount due under its contract with the subcontractor.

[7] The roof repairs were not done by the subcontractor who originally built the roof.

Finally, St. Tammany cites *Schiro-Del Bianco Enterprises, Inc. v. NSL, Inc.*, 765 So.2d 1087 (La. App. 4 Cir. 5/24/00) for the proposition that subcontractors could not recover from the owner upon a theory of unjust enrichment. (Rec. Doc. 164 at 6). However, *Schiro* analyzed not whether a subcontractor could recover from an owner, but whether a contractor could recover from the owner <u>on behalf of a subcontractor</u> who had neither filed suit against the owner nor filed a Private Works Act[8] lien when the contractor had not already paid the subcontractors and thus had "not incurred any actual damages, i.e. no actual expenses." *Schiro-Del Bianco*, 765 So.2d at 1091-92. The court found that the <u>contractor</u> could not recover on behalf of the subcontractors under a theory of unjust enrichment because the <u>contractor</u> had another remedy at law. *Id.* at 1092. The court then noted that the claims of the subcontractor had not been prescribed and if the subcontractor brought suit against the contractor, the contractor would then have a third party action against the owner. Id.

Lack of privity does not automatically bar recovery under a theory of unjust enrichment. In fact, the Louisiana Court of Appeal, Fourth Circuit in *Vandervoort v. Levy*, 396 So.2d 480, 485 (La. App. 4 Cir. 1981), a case that court decided after both its rulings in *Lumber Products* and *Olympia*, held the "absence of a contract" and the resultant "lack of privity" to be "prerequisites

---

[8] La. Rev. Stat. 9:480.

to recovery in unjust enrichment" and "essential element[s] of the actio de in rem verso." *Vandervoort*, the most closely analogous case of those cited by the parties, involved a suit filed by a contractor, who was hired by an architect, against the owner and the architect for payment on alleged "extra work" performed outside the scope of the original specifications between the owner and the architect. *Id*. at 481-83. Although the parties in *Vandervoort* did not have written or recorded contracts,[9] the remaining facts and claims mirror those of the present case. Both cases involve work alleged by the owner to be "extra work" outside the scope of the owner's direct, original agreements with the contractor/architect, and both cases involve disputes as to who authorized the alleged "extra work."[10] *Id*. at 485.

The *Vandervoort* court upheld the trial court's ruling against the owner in favor of the contractor on a theory of unjust enrichment.[11] *Id*. at 484. The court found the requirement of

---

[9]The owner and architect operated from a list of specifications and a cost itemization letter for proposed work, while the architect and contractor utilized the contractor's bid. All parties also participated in oral communications to each other or representatives. *Vandervoort*, 396 So.2d at 482-83.

[10]UDR claims that the work it performed was at the direction of "the Parish and/or the Parish's monitoring firm, Shaw Environmental, Inc.,(Complaint ¶ 14, Rec. Doc. 1 at 4). The *Vandervoort* contractor contended that all the "extra work" was orally authorized by the architect, and the architect stated that some of the "extras had been approved by the [owners] or had been done by [contractor] on his own initiative." *Id*. at 483. The owner testified that "with the exception of some minor items, he did not authorize any extra work." *Id*.

[11]The *Vandervoort* court specifically found, "The trial judge properly held the [owner] liable for extra work performed by [contractor] outside of that contemplated by the original specifications and encompassed in [contractor's] original bid." Id.

14

enrichment was satisfied because the owners received the benefit of work for which they had not paid and, conversely, impoverishment was met because the contractor had performed extra work and furnished extra materials for which he had not been compensated. *Id*. Thus the court found the relationship between the enrichment and the impoverishment to be clear and sufficient to satisfy the third requirement of unjust enrichment.[12] Noting the lack of a contractual relationship between the owner and the contractor due to the architect hiring the contractor, the court found that both an absence of justification or cause for the enrichment and no other legal remedy for the contractor. *Id*. The court rejected the owner's argument that lack of privity barred the contractor's recovery and found "the absence of a contract [to be] one of the prerequisites to recovery in unjust enrichment." *Id*. at 484-85. The appellate court went on, "Rather than serving to preclude [the contractor's] recovery, the lack of privity is an essential element of the actio de in rem verso." *Id*.[13]

---

[12]Compare to *Olympia Company* in which the court found no connection between the enrichment and the impoverishment. In *Olympia*, the enrichment was the insurance money retained by the owner in excess of the amount the owner paid (to a party other than the plaintiff) for repair work performed after a storm occurring over two years after owner's acceptance of the building upon which the plaintiff had worked. *Olympia*, 342 So.2d at 1277-78. The impoverishment was an unpaid portion of the contractual amount agreed upon between plaintiff subcontractor and the general contractor for original construction of the building's roof. *Id.* at 1276. Further the court found the suit for incomplete payment to be solely one of breach of contract between the subcontractor and the general contractor. *Id*. at 1277.

[13]The court then found that the extra work was compensable and engaged in an analysis of the conformity of the extras with the work originally envisioned and whether there were any drastic substitutions or extreme changes. *Id*. at 485. Despite disputes about who authorized the

The enrichment and impoverishment at issue in the present motion, along with the connection between the two, is directly analogous to those presented in *Vandervoort*. Just as the owner in *Vandervoort*, St. Tammany has allegedly received the benefit of work for which it has not paid, and like the *Vandervoort* contractor, UDR has performed work for which it allegedly has not been compensated. Similarly, the connection between St. Tammany's enrichment and UDR's impoverishment is synonymous to the clear connection in *Vandervoort* (and wholly distinct from the excess insurance payment in *Olympia*). *Vandervoort*, 396 So.2d at 484; *Olympia*, 342 So.2d at 1277-78. Just as the *Vandervoort* architect hired the contractor, so did contractor Omni hire UDR, and all parties in the present action acknowledge the lack of a contractual relationship between St. Tammany and UDR. Accordingly, as in *Vandervoort* there may be "an absence of justification or cause for the enrichment" in the present case. 396 So.2d at 484.

UDR has asserted three claims against St. Tammany, quantum meruit (Count Three), unjust enrichment, (Count Five), and Breach of Duty to Obtain Bond (Count Seven). This Court dismissed UDR's quantum meruit claim in an earlier Order (Rec. Doc. 28) and

---

extra work, the court found recovery against the owner under a theory of unjust enrichment was consistent with Louisiana statutes and rejected the owner's argument that he was entitled to indemnification from the architect for any amount owed to the contractor. *Id.* The court found that the extra work, though unauthorized by owner, "was reasonably required in furtherance of the contemplated renovation;" thus any authorization of the architect was for the benefit of the owner, who was therefore not entitled to recover from the architect. *Id.*

dismisses the Breach of Duty to Obtain Bond in the present Order due to the inapplicability of LPWA. Hence UDR's only remaining claim is unjust enrichment. St. Tammany asserts, however, UDR has another available remedy at law besides unjust enrichment, a lawsuit against Omni. However, the case St. Tammany cites in support of its assertion that UDR's remedy is suit against Omni speaks to the remedy available to a contractor, who has not paid the subcontractor, suing the owner on behalf of the subcontractor. *See Schiro-Del Bianco*, 765 So.2d at 1091-92. UDR accurately points out that St. Tammany's proposed remedy does not give sufficient weight to the extra-contractual nature of the work and does not consider the legal remedy effects of enforceability of the "pay when paid" clause in the UDR/Omni contract.[14] Just as the *Vandervoort* owner alleged that the work done was "extra work" outside the scope of the original specifications between the owner and the architect, so too does St. Tammany claim that the work performed by Omni and its subcontractor's is outside of the Parish's contract with Omni.[15] The facts alleged in the pleadings

---

[14]UDR disputes the validity of the clause but argues that if the clause is deemed enforceable, "the Parish's failure to satisfy an obligation will ... have precluded a legal basis for recovery of payment by UDR." (Rec. Doc. 170 at 9).

[15]See Answer, Affirmative Defenses, and Cross-Claim of St. Tammany, Rec. Doc. 154. For example, St. Tammany asserts that Omni did not take steps to ensure that its "subcontractors performed only eligible Hanger Leaner Work." and that work was performed in "ineligible areas." *Id*. at 13. See also Omni Panicle's Answer ¶ 18, Rec. Doc. 11 at 3-4. (alleging that "St. Tammany Parish has refused and/or failed to pay Omni Pinnacle for the portion of the work performed by UDR under its subcontract with Omni Pinnacle which represents the remaining amounts alleged to be owed to UDR").

are insufficient to allow the Court to engage an in-depth factual analysis such as that undertaken by the court in *Vandervoort*. *See Vandervoort*, 396 So.2d at 483-485. Therefore, unjust enrichment may very well be UDR's sole available remedy.[16] When "resolving all doubts in favor of complainant," the Court cannot dismiss UDR's unjust enrichment complaint at this time because it has shown a "plausible set of facts that support the claim and would justify relief" and presented scenarios "consistent with the allegations in the complaint." *Tanglewood East*, 849 F.2d at 1572; *Lane*, 529 F.3d at 557; *Bell Atlantic*, 550 U.S. at 1969.

Accordingly,

---

[16]Note that the analysis of unjust enrichment with respect to UDR differs somewhat from that presented by the Court when dismissing Omni's claims of unjust enrichment. The Court found Omni's Cross-Claim to be that unjust enrichment would alternatively apply "if this Court finds St. Tammany does not owe any payment under the contract." (Rec. Doc. 145 at 14-15). Hence, the Court found that the only claims before it at that time were Omni's breach of contract claims for work performed in accordance with the contract terms and conditions and that the breach of contract action was an adequate remedy available at law. *Id*. at 15. Omni has since filed an Amended Cross-Claim that specifically asserts unjust enrichment for any "work performed by Omni and its subcontractors . . . beyond the scope of the terms of the contract between St. Tammany Parish and Omni, or if the contract is found invalid." (Rec. Doc. 184 at 6, ¶ 32). In contrast, UDR does not have a contract with St. Tammany and therefore does not have a breach of contract claim against St. Tammany as Omni does. Although UDR's complaint does not request payment solely for the "extra work" outside the Omni/St. Tammany contract, it does acknowledge its own contract with Omni and requests that the Parish directly pay any funds relating to UDR's work or services. (Rec. Doc. 1 at 9, ¶ 65). Furthermore, as this case progresses, this Court may find, like the court in *Shiro*, that Omni cannot recover payments on behalf of its subcontractors that Omni has not paid and has therefore incurred no actual damages. *Schiro-Del Bianco*, 765 So.2d at 1091-92. Additionally, the Court's final analysis may continue to parallel the *Vandervoort* analysis, reaching the ultimate conclusion that St. Tammany, as the party receiving the benefit of the additional work, is solely liable to UDR and that St. Tammany is not even entitled to indemnification from Omni. *See Vandervoort*, 396 So.2d at 485.

**IT IS ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to UDR's claims under LPWA because the Court finds LPWA inapplicable to this service contract for hurricane debris removal.[17] The motion is **DENIED** with respect to UDR's unjust enrichment claims.

New Orleans, Louisiana, this 24th day of March, 2009.

_____
IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

---

[17] Note that the Court's reason for granting St. Tammany's Motion to Dismiss UDR's LPWA claim differs from St. Tammany's arguments. St. Tammany argued that LPWA applies and that UDR failed to establish its timely compliance with LPWA's requirements for asserting a claim against an owner and that an LPWA claim is premature. The Court found that LPWA does not apply to the contract at issue; hence UDR's claim under LPWA is dismissed.